Taliaferro, J.
The plaintiff sues the defendant for $635 60, with interest, from 11th April, 1863. The action is founded upon a draft drawn as follows:
“$635 60. St. Martinsville, 11th April, 1863.
At sight, please pay to the order of Captain McCracken, six hundred and thirty-five dollars and sixty cents, for value received, and charge the same to account of your obedient servant.
E. R. Poole.-
To Messrs. Graves & Goldsmith, New Iberia, La. ”
The defendant, in his answer, admits the execution of the draft, and avers that it would have been paid in Confederate notes, according to the express understanding of the parties, had it ever been presented, which he denies ; that the draft was drawn on funds of that character, and that payment in any other kind of notes or funds never entered into the contemplation of the parties at the time of the contract. Interrogatories were propounded to the defendant, and they were answered categorically, and with great fullness and precision.
The answers clearly establish all the averments of the answer. Judgment was rendered in the Court below in favor of the defendant, and the plaintiff has appealed.
The introduction of the answers, as evidence, was objected to on the ground that their effect would be to contradict a written agreement by parol proof. The objection was overruled. We find no bill of exceptions to the ruling of the Court, nor any motion to strike out the answers, or any part of them.
The Judge a quo correctly remarks, in his judgment, that “ the rule as to- the exclusion of parol testimony to contradict written agreements, does not apply to such a case.” Kelly v. Ledoux, 11 An. Rep. 690.
It is an attribute of sovereignty to authorize the issue of money, and to legalize its circulation as a medium of exchange. No State is permitted, by the Constitution of the United States, to coin money or emit bills of of credit. Art. 1, j? 10. This power being expressly given to Congress by the Constitution, and as expressly withheld from the States, it is clear • that no State, nor any combination of States, can lawfully exercise that *360 power. But it is contended that the power to coin money and emit bills of credit, belongs of right as well to governments de facto as to governments de jure; and, hence, to attach credit and legality to what is termed Confederate currency, so as to render it a fit exponent of value in matters of commerce, and to give it efficacy as an object of contracts between individuals, the prominent argument offered is, .that it was created and put into circulation by the authority of a government defacto. In the case of Smith v. Stewart, recently decided, the opinion of this Court was given against the pretension of the late so-called Confederate States to the dignity of a de facto government. Those States have, since :the termination of the rebellion, severally declared, in their conventions to form new constitutions, that their ordinances of secession were nullities ; an admission clearly ignoring their assumed status as a de facto goverment.
The currency, in question, had its inception in the effort made by the States lately in rebellion to subvert the United States Government, by dissevering the Union of the States and establishing a confederation in the Southern section of the republic. That currency was made exclusive within the limits of the rebellion, and that by illegal apd arbitrary force. Looting to the authority from whence it eminated, and the special purpose for which it was established, its legality as a circulating medium at an.y timé heretofore, or now, cannot receive judicial recognition.
In the case now before the Court, the illegality and failure of consideration are fully shown.
It is therefore ordered, adjudged and decreed, that the judgment of the District Court be affirmed, with costs.